IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | CR No.   22-CR-01002 DHU |
| vs. | ) | |
| | ) | |
| **JEREMY HUNT,** | ) | |
| | ) | |
| Defendant. | ) | |

## UNITED STATES' SENTENCING MEMORANDUM

The United States respectfully submits its Sentencing Memorandum with respect to Defendant Jeremy Hunt. The United States requests that the Court impose a sentence of 108 months incarceration.

## PROCEDURAL HISTORY

1. On June 15, 2022, an Indictment was filed charging Defendant with a single violation of 18 U.S.C. §§ 922(g)(1) and 924, that being felon in possession of a firearm and ammunition. Doc. 2.

2. On January 31, 2023, Defendant pled guilty to the Indictment, pursuant to a plea agreement. Doc. 35. In exchange for his plea of guilty, the United States agreed to recommend a sentence of incarceration no higher than the low end of the properly calculated guideline range. *Id.* at 12.

3. An initial Presentence Investigation Report (PSR) was prepared and disclosed on April 12, 2023. Doc. 37. Defendant's total offense level was calculated as 27, and his criminal history category was calculated as VI, resulting in a guideline imprisonment range of 130-162

months, which reverted to the statutory maximum of 120 months. *Id.* at ¶ 96. After consideration of the factors in 18 U.S.C. § 3553(a), the PSR author determined that a sentence within the advisory guideline range may be warranted in this case. *Id.* at ¶ 113.

4.  Defendant filed 14 objections or corrections to the PSR. Doc. 48. Defendant filed a 15th objection or correction to the PSR on August 2, 2023. Doc. 50. Of the objections, only objections 2, 3, 4, and 15 substantively related to the guideline calculation. Summarily, Defendant's objections seek a finding that he only has 10 criminal history points and is thus a criminal history category V, not a VI as originally calculated. Docs. 48 & 50 (48 asserting he had 11 criminal history points and 50 asserting an additional point reduction). The United States responded and, although the parties ultimately disagreed on the specific basis, we now stand in agreement on at least the effect of all but one substantive objection, that being objection 3 to paragraph 41 of the PSR. *See* Doc. 51 (the United States also initially disagreed with the reduction proposed in objection 4 as untimely, but the United States readily concedes now that the reduction is appropriate).

5.  With only slight disagreement (10 points vs. 11 points), the parties agree that Defendant falls under criminal history category V. Probation agreed with the United States and amended the PSR accordingly, as described in the first addendum to the PSR. Doc. 54. A second Presentence Investigation Report was disclosed on October 18, 2023. Doc. 55. On November 8, 2023, probation filed a second addendum to PSR2, reflecting the implementation of the "status point" amendment. Doc. 59. Probation ultimately determined that Defendant fell under offense level 27 and criminal history category V, resulting in a guideline range of 120-150 months which reverts to the statutory maximum of 120 months. Doc. 55 at ¶ 98.

6. The United States has no objection to the PSR, as amended, and agrees that the facts, as outlined in the PSR under Offense Conduct, adequately describe the nature of this offense. Doc. 55 at ¶¶ 10-16. Additionally, the government concurs that the PSR, as amended, correctly calculates the applicable total offense level and criminal history category. *Id.* at ¶ 98.

7. For the reasons stated herein, the United States requests the Court sentence Defendant to a term of 108 months' imprisonment, followed by a three year term of supervised release, with the recommended conditions listed in Attachment A to the PSR.

## ARGUMENT

The Court should apply *United States v Booker*, 543 U.S. 220 (2005), and *Rita v. United States*, 127 S.Ct. 2456 (2007), to arrive at a reasonable sentence for Defendant. In doing so, the Court must consider the sentencing factors set forth in 18 U.S.C. § 3553(a). These factors support the Government's request.

1. The Nature and Circumstances of the Offense

On February 7, 2022, Defendant was arrested on two warrants after he was observed driving a stolen SUV during an investigation of known drug traffickers and convicted felons. *Id.* at ¶¶ 11-12. Following his arrest, officers searched the stolen SUV and located a loaded black Ruger Security 9mm semiautomatic pistol. *Id.* at ¶ 13. The firearm was loaded with ammunition in a high capacity magazine and a round in the chamber. *Id.* The stolen SUV also contained small amounts of methamphetamine, heroin, and pills, along with drug paraphernalia and additional ammunition. *Id.* Defendant acknowledged ownership of the items in the stolen SUV in a statement to law enforcement. *Id.* at ¶ 14. Defendant also acknowledged an addiction to methamphetamine and heroin. In his statement to officers, he described his mindset on the date of his arrest: "Well you know, honestly, I've had the perception of if it came down to it and I was

going to jail again I was going to use my gun. I was going to shoot whoever I had to and use the last bullet on myself. It's probably a good thing I didn't have that with me." BN 004 at 27:00 – 27:30. Defendant was previously convicted of several felony offenses, including trafficking methamphetamine and heroin (multiple instances), aggravated assault with a deadly weapon, and receiving or transferring a stolen motor vehicle. Doc. 35 at 9. The nature and circumstances of the offense involve Defendant's possession of a firearms, narcotics, and a stolen vehicle. He expressed a plan to engage in a shootout with cops and suicide, just to avoid prison. It is fortunate that officers contacted him away from the vehicle and the firearm. The seriousness of the offense supports the sentence recommended by the United States.

2. History and Characteristics of the Defendant

Defendant has a history of arrests, felony convictions, and violations of court and probation conditions across several states, beginning in 2012 when he was already 29 years old. Doc. 55 ¶¶ 32-69. Defendant's convictions reflect a recent and escalating pattern of criminal activity involving drugs, firearms, and violence. *See id.* at ¶ 33 (convicted of unlawful possession of a firearm, dismissed charges reflect an aggravated assault and involvement of a large capacity feed device); *id.* at ¶ 39 (convicted of aggravated assault with a deadly weapon when he pointed a firearm at the victim); and *id.* at ¶ 43 (convicted of trafficking heroin, underlying facts reflect presence of a .22 handgun and a sawed-off shotgun in the vehicle with the drugs).

His prior arrests are equally concerning. *See id.* at ¶ 49 (charged with unlawful possession of a large capacity firearm for a pistol and two high capacity magazines his wife turned in after obtaining an order of protection); *id.* at ¶ 50 (charged with attempted murder based on a statement of his wife that Defendant held her head under water in the bathtub with their children

4

present); *id.* at ¶ 52 (describing an arrest for DWI where Defendant travelled into oncoming traffic and crashed head-on into a vehicle); *id.* at ¶ 56 (reflecting three charges for violating a protection order); and *id.* at ¶¶ 57-59 (reflecting three separate instances of resisting arrest in 2020, including a threat to kill himself if he went back to jail).

Defendant's unwillingness to comply with probation was demonstrated by his actions while on his most recent period of supervision. On June 28, 2021, he was sentenced on a consolidated plea that resolved six different felony cases. *Id.* at ¶¶ 38-41 & 43-44. Despite facing a combined 25.5 years of jurisdiction in the plea agreement, he was sentenced to five years of supervised probation. A motion to revoke his probation was filed on February 21, 2022, due to Defendant being charged in the instant offense, failing to report to probation, failing to receive permission to leave Bernalillo County, and associating with persons detrimental to supervision. *Id.* at ¶ 38. These violations are particularly egregious because Defendant was given an opportunity to engage in treatment, as opposed to simply incarceration, following several felony convictions. Instead of taking advantage of that opportunity, Defendant absconded, left the county where he was being supervised, and had a chance to engage in additional criminal behavior. Luckily, this opportunity did not end in physical harm to any person, but Defendant's complete disregard for conditions of probation, his ability to obtain firearms despite his prohibited status, and his stated willingness to shoot at law enforcement reflect the high danger he poses to the public and any law enforcement officers forced to come into contact with him.

The PSR also lists five other pending criminal cases out of Utah and Colorado and sentencing on his consolidated state probation matters out of New Mexico. At least one of the out of state cases is still pending trial with active warrants, and Defendant is currently in primary

5

New Mexico state custody. He will have to resolve at least some of these matters before he can be released from custody. The state probation violation jurisdiction far exceeds the jurisdiction available to the Court on the instant offense. Notably, the guidelines address the scenario where the Court imposes sentence on a Defendant subject to an anticipated state term of imprisonment. U.S.S.G. § 5G1.3. Application Note 4(C) accounts for this particular situation, where a defendant was on state probation at the time of the instant offense and will have such probation revoked, and it recommends the sentence be imposed consecutively to the sentence imposed for the revocations. *Id.* The United States requests this sentence run consecutively to any sentence imposed by the state.

The government has no basis to challenge the personal history of Defendant, as represented in the PSR. This personal history includes some mitigating factors such as his unstable childhood, his military service, and his physical and mental health history. *Id.* at ¶¶ 71-96. However, it also includes several aggravating factors, including Defendant's extensive history of substance abuse, which exacerbated many physical issues and contributed in much of his escalating criminal behavior. *Id.* Defendant's criminal history, combined with his other personal history, supports a sentence of 108 months' incarceration.

3. <u>The Need for the Sentence Imposed to Promote Respect for the Law, Provide Just Punishment, Adequate Deterrence and to Protect the Public from Further Crimes of the Defendant</u>

The sentence requested by the government is a sentence that is necessary to promote respect for the law, provide just punishment, adequately deter Defendant and others from engaging in similar conduct, and to protect the public. Defendant has demonstrated, through his conduct, that he presents a serious danger to the community outside of custody and protection of

the community is the main driving force behind the requested sentence. Safeguards, such as criminal laws and court orders, have been completely ineffective in reigning in Defendant's criminal conduct. He continues to possess and use firearms, flaunting his prohibited status with every arrest. There are no magic words that can be said to Defendant that will obtain his compliance with the law at this time. This history is particularly concerning in light of Defendant's expressed intentions to do anything to avoid prison, including a willingness to shoot at law enforcement.

Furthermore, the proposed sentence would have the strongest chance to promote respect for the law and deter future crimes. A study conducted by the United States Sentencing Commission in 2019 found that firearm offenders have higher recidivism rates than non-firearm offenders and desist from criminal activity later in life than non-firearm offenders. *Recidivism Among Federal Firearms Offenders*, p. 48, *accessed at* https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2019/20190627_Recidivism_Firearms.pdf. The United States Sentencing Commission published another recent study that suggests "an inverse relationship between length of incarceration and recidivism for offenders serving more than 60 months incarceration." *Length of Incarceration and Recidivism*, p. 30, *accessed at* https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2020/20200429_Recidivism-SentLength.pdf. The combination of these two studies strongly supports the government's request for 108 months. A 108 month sentence would provide a greater chance at a deterrent effect, while also acknowledging Defendant's acceptance of responsibility.

## CONCLUSION

WHEREFORE, the United States respectfully requests that this Court sentence Defendant to a total term of 108 months' imprisonment.

Respectfully submitted,

ALEXANDER M.M. UBALLEZ
United States Attorney

 /s/ *Timothy D. Trembley*
TIMOTHY D. TREMBLEY
Assistant United States Attorney
PO Box 607
Albuquerque, NM 87103
(505) 346-7274

I hereby certify that on February 27, 2024,
I filed the foregoing using CM/ECF
which caused the following parties or counsel to
be served by electronic means.

 /s/
Timothy Trembley
Assistant United States Attorney